# AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

I, Rory Mitchell, being duly sworn, depose and state:

**Introduction and Agent Background**

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since 2022. I am currently assigned to the DEA Cross Border Initiative Task Force located in Massachusetts. Prior to becoming a DEA Special Agent, I was employed as a Deportation Officer with Immigration and Customs Enforcement for two years. I have received training in, among other things, surveillance techniques and investigative tools and methods used to identify and disrupt major drug trafficking organizations.

3. I have participated in many aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents and cooperating witnesses, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, as well as my discussions with experienced agents and investigators, I have become familiar with the way illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the way narcotics organizations use various forms of violence and intimidation in furtherance of their narcotics trafficking activity, and to protect their operations, members, narcotics, and narcotics proceeds.

**Purpose of Affidavit**

4. I submit this affidavit in support of an application for a criminal complaint against the following individuals:

   a. Reginel CAZARES, a/k/a "JUNIOR,"

   b. Luis Ramon FELIZ SANTANA, a/k/a "Luis Felix" a/k/a "Michael Corleone,"

   c. Cesar PARRA, a/k/a "Flow," and

   d. Jesus LOPEZ MEDINA (collectively, the "Target Subjects"),

charging that from at least in or about September 2023 through the present, the Target Subjects conspired with each other and with other persons known and unknown to knowingly and intentionally distribute and possess with intent to distribute controlled substances, that is, 400 grams or more of fentanyl, a Schedule II controlled substance, and 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846 (the "Target Offense").

5. I have personally participated in this investigation since August 2023. This affidavit does not set forth all the facts developed during this investigation. Rather, it sets forth only those facts that establish probable cause to believe that the Target Subjects identified herein have committed the Target Offense.

**Probable Cause**

6. Since at least May 2021, the DEA has been investigating a drug trafficking organization that sends trucks containing kilograms of narcotics, including fentanyl and cocaine, from in or around Ontario, California, to Massachusetts. In September 2023, undercover DEA investigators (the "UCs") began communicating via the encrypted platform WhatsApp with the holder of mobile phone number (310) 623-9294 ("Target Mobile Phone #1"). Target Mobile Phone #1 was believed to be used by a person known as "JUNIOR," later identified as Reginel

CAZARES, who lived in or near Tucson, Arizona, and who organized the delivery of kilograms of narcotics from California to Massachusetts. The UCs represented themselves to CAZARES as transportation brokers who could send truck drivers to deliver CAZARES's drugs and drug proceeds between California and Massachusetts.

7. In his communications with the UCs, CAZARES said he could send to Massachusetts: "*mentiras*" ("lies"), "*elegante*" ("elegant"), and "*bonitos*" ("pretty ones"). Based on my training and experience, and that of the UCs, CAZARES was referring, respectively, to fentanyl, cocaine, and heroin. In a communication in October 2023, CAZARES said he could provide "44," meaning 44 kilograms.

*November 9, 2023: CAZARES Directed the UC to Send a Truck Driver to Bring Drug Proceeds from Massachusetts to California*

8. On November 9, 2023, a UC and CAZARES discussed a plan for the UC to send a truck driver to California to pick up drugs on November 20, 2023. CAZARES said that it would be "30 and up," meaning 30 kilograms or more. The same day, CAZARES asked whether the UC's truck driver could "pick up paper in Boston before going down." Based on my training and experience, I know that it is common for Massachusetts-based narcotics traffickers to receive narcotics from other states like California and New York and, following the sale of those narcotics, to send proceeds back. In addition, "paper" is a common term used by drug traffickers to mean drug proceeds. I believe CAZARES was asking the UC whether the UC's truck driver could pick up drug proceeds in Massachusetts on the way to California. The UC agreed to have his truck driver do so.

*November 14, 2023: Investigators Identified "JUNIOR" as CAZARES*

9. On November 14, 2023, investigators executed a warrant issued in the District of Arizona to determine with precision the location of Target Mobile Phone #1. Investigators based

3

in Arizona determined that Target Mobile Phone #1 was moving in tandem with a green truck marked "Northwest Landscaping," which bore Arizona license plate H2A8BBA. A police officer from Marana, Arizona, observed the truck commit a traffic infraction and stopped it. The driver presented a driver's license for "Reginel Rocha CAZARES." There was no one else in the truck. Using a cell-site simulator, investigators determined with precision that Target Mobile Phone #1 was located at the site of the traffic stop while the stop was occurring. Based on this information, I believe that CAZARES was the person communicating with the UCs using Target Mobile Phone #1 and that CAZARES is "JUNIOR."

*November 15, 2023: A Cooperating Source Picked Up $427,840 Cash from FELIZ SANTANA and PARRA in Massachusetts*

10. On November 11, 2023, CAZARES forwarded the UC a telephone number, 978-620-6494 ("Target Mobile Phone #2) to contact to pick up the "paper." Investigators determined Target Mobile Phone #2 to be a telephone number that DEA investigators had recently determined, in a separate investigation, was used by Luis Ramon FELIZ SANTANA, a/k/a "Luis Felix" a/k/a "Michael Corleone." In the preexisting investigation, FELIZ SANTANA was determined to be a kilogram-level narcotics trafficker based in Massachusetts. FELIZ SANTANA was further determined to work with an associate, Cesar PARRA a/k/a "Flow," who received drugs in Massachusetts on FELIZ SANTANA's behalf.

11. In subsequent WhatsApp communications, FELIZ SANTANA used Target Mobile Phone #2 to arrange with a UC to drop off suspected drug proceeds at a commercial plaza in Tewksbury, Massachusetts. Prior to the drop-off, FELIZ SANTANA sent pictures of U.S. Postal service boxes with fake shipping labels. FELIZ SANTANA said that the money would be boxed in those boxes and would be "190" and "239." On November 15, 2023, a person cooperating with law enforcement (the "CS"), accompanied by a UC, drove a tractor trailer to the commercial plaza

4

in Tewksbury and, as the UC watched, met with a person later determined to be PARRA. PARRA delivered to the CS three U.S. Postal boxes—the same boxes FELIZ SANTANA sent pictures of. Investigators opened the boxes, which contained a total of $427,840 cash. Following the deal, the UC confirmed that PARRA (who, as stated earlier, investigators knew to be an associate of FELIZ SANTANA) was the person who dropped off the money.

*November 20, 2023: CAZARES Directed the UCs to Deliver the $427,840 to an Unknown Male in Ontario, California*

12. CAZARES then used Target Mobile Phone #1 to direct the UCs to drop the money off at a truck stop in Ontario, California. On November 20, 2023, a UC dropped the money off to an unknown male; substantially all the money was later recovered by law enforcement. CAZARES learned that the money was recovered and told the UC that "thunder struck" and that the truck driver should change his phone number.

13. CAZARES and the UCs discussed a pickup of narcotics in California. CAZARES wrote that "they're going to give him 40," meaning 40 kilograms. Ultimately no narcotics pickup occurred. CAZARES apologized and said they would "give the driver something extra for his time." CAZARES said they would give the driver "5 dollars over there." Based on my training, experience, and familiarity with this investigation, CAZARES was stating his organization would pay the UC's truck driver an extra transportation fee of $5,000 ("5 dollars") in Massachusetts ("over there") to make up for not delivering any drugs.

*December 4, 2023: A Cooperating Source Picked Up $202,090 Cash from FELIZ SANTANA and PARRA in Massachusetts*

14. On November 22, 2023, CAZARES used Target Mobile Phone #1 to text a UC, "When can you turn back around?" CAZARES and the UC negotiated a date for the truck driver to return to California. Days later, CAZARES asked, "will the 6 be down? So you can pick up

5

before coming if you can." Based on my familiarity with this investigation, I know that CAZARES refers to the UC's truck driver as "6" and to the East Coast as "down." I therefore believe CAZARES was asking whether the UC's truck driver was going to be on the East Coast to pick up drug proceeds on his way to California. CAZARES said the location would be "same as last time."

15. CAZARES sent the UC a telephone number, 978-566-4538 ("Target Mobile Phone #3") for the UC to contact to pick up the money. Investigators later executed a warrant to determine with precision the location of Target Mobile Phone #3; investigators saw FELIZ SANTANA moving with the phone, and located the phone, with precision, at FELIZ SANTANA's apartment (leased in his name) in Methuen, Massachusetts. Accordingly, I believe FELIZ SANTANA is the user of the phone.

16. On December 4, 2023, CAZARES wrote that it would be "200 tickets." Based on my training and experience, "tickets," like "paper," is a common term for drug proceeds. I believe CAZARES was telling the UC that there would be $200,000 drug proceeds to pick up in Tewksbury. FELIZ SANTANA also used Target Mobile Phone #3 to write, "here it's 200." FELIZ SANTANA again sent a picture of boxes with shipping labels and wrote, "small box has 100 and the other has 100, the envelope is for you."

17. On December 4, 2023, the CS, accompanied by a UC, drove a tractor trailer to the commercial plaza in Tewksbury and met with PARRA. PARRA delivered to the CS two U.S. Postal boxes—the same boxes FELIZ SANTANA sent pictures of—and an envelope with a transportation fee. Investigators opened the boxes, which contained a total of $202,090 cash. Following the pickup, FELIZ SANTANA used Target Mobile Phone #3 to text, "god willing, once you return, we will have a big score." Based on my training, experience, and familiarity with this

investigation, I believe FELIZ SANTANA was stating he hoped the UC's driver would return to Massachusetts with a large load of narcotics. CAZARES similarly wrote, "may it arrive well and return."

*December 11, 2023: CAZARES Directed the UCs to Deliver the $202,090 to Jesus LOPEZ MEDINA in Ontario, California*

18. CAZARES then used Target Mobile Phone #1 to direct the UCs to, again, drop the money off at a truck stop in Ontario, California. A UC asked CAZARES whether the person who picked up the money could be the same person who dropped off the "passengers," meaning narcotics. CAZARES declined, but stated, "Everything is all set though, it's for 20." CAZARES later wrote that it would be "10." I believe CAZARES was referring to the number of kilograms that the UC's truck driver would pick up.

19. CAZARES asked the UC for the truck driver's phone number, which the UC provided. A short time later that phone number received a text from 661-440-3059 ("Target Mobile Phone #5"), which is subscribed to Jesus LOPEZ MEDINA of Bakersfield, California. On December 11, 2023, a UC dropped off the $202,090 at a truck stop in Ontario, California, to an individual later identified as LOPEZ MEDINA. LOPEZ MEDINA drove a white Nissan Sentra to the pick-up with California registration 5KBH127. LOPEZ MEDINA was identified when investigators entered the subscriber name for Target Mobile Phone #5, Jesus LOPEZ MEDINA, into a DEA database and learned LOPEZ MEDINA had been the target of a previous investigation. The UC identified LOPEZ MEDINA as the same person who picked up the money from the UC on December 11, 2023.

20. Following the money drop-off, CAZARES and a UC discussed the truck driver picking up narcotics. The two could not agree on a location, and CAZARES expressed concerns about the UC's truck driver. No narcotics transaction occurred.

*February 9, 2024: Investigators Saw PARRA Discard Suspected Narcotics Packaging in a Dumpster Near His Residence*

21. On February 9, 2024, investigators were conducting surveillance at PARRA's residence in Methuen, Massachusetts. Investigators saw PARRA exit his building with a grey trash bag and drive a short distance to a dumpster. Investigators later recovered the trash bag and found suspected narcotic-kilogram packaging with powder on it. The powder was later tested at a DEA laboratory and found to be a substance containing cocaine.

*February 16, 2024: At CAZARES's Direction, the CS Picked Up 9 Kilograms of Cocaine and 4 Kilograms of Fentanyl from LOPEZ MEDINA in Ontario, California*

22. On January 9, 2024, CAZARES used Target Mobile Phone #1 to write to the UC that he had "two lies and one flower," which I believe to be code words for 3 kilograms of narcotics. The UC responded that he would only send a truck driver for a minimum of 10. Three days later, on January 12, 2024, FELIZ SANTANA using Target Mobile Phone #3 wrote, "we are almost in something . . . did you talk to cousin." A UC explained, "[H]e said he has 3, I want 10 or more because less than that is not convenient for me." FELIZ SANTANA responded, "[Y]es, you're right that's why we have to work with him minimum 15 . . . leave it to me." Based on my training, experience, and familiarity with this investigation, I believe FELIZ SANTANA was stating that the UC should only send his truck driver to California for a minimum of 15 kilograms of narcotics.

23. On February 2, 2024, CS-1 received a communication from 424-478-1866 ("Target Mobile Phone #4). Investigators believe the phone is used by CAZARES because CAZARES communicates with the UC using similar terminology, because Target Mobile Phone #1 and Target Mobile Phone #4 both used WhatsApp to text with substantially the same contacts, and because court-authorized location information placed the two phones in substantially the same places in

Arizona.

24. CAZARES (using Target Mobile Phone #4) and the UC agreed that the UC would send the truck driver to pick up narcotics in California on February 16, 2024.

25. On February 15, 2024, CAZARES sent the UC the telephone number for Target Telephone #5, the phone subscribed to LOPEZ MEDINA, as the local contact in California. LOPEZ MEDINA agreed to meet at a truck stop in Ontario, California, on February 16, 2024. On February 16, 2024, the CS, accompanied by a UC, met with LOPEZ MEDINA in Ontario.

26. LOPEZ MEDINA arrived in the same white Nissan Sentra he used for the money pickup on December 11, 2023. LOPEZ MEDINA removed two weighted bags from his car that he handed to the CS. The two weighted bags contained 13 brick-shaped items. The brick-shaped items were subsequently analyzed at a DEA laboratory and found to be approximately 9 kilograms of a substance containing cocaine and 4 kilograms of a substance containing fentanyl.

27. On February 27, 2024, investigators plan to deliver "sham" narcotics in Tewksbury, Massachusetts, designed to look like the 13 kilograms dropped off by LOPEZ MEDINA, to CAZARES's intended recipients.

**Conclusion**

28. Based on the foregoing, there is probable cause to believe that probable cause exists to conclude that the Target Subjects conspired to distribute and to possess with intent to distribute controlled substances, that is, 400 grams or more of fentanyl, a Schedule II controlled substance,

and 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846.

Respectfully submitted,

_Rory Mitchell /by Paul G. Levenson_
Rory Mitchell
Special Agent
Drug Enforcement Administration

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on February 26, 2024.

_____
HON. PAUL G. LEVENSON
United States Magistrate Judge